UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BASHIRAN BIBI,

                                Plaintiff,

    -against-

ASSISTANT SECRETARY OF U.S. DEPARTMENT OF STATE BUREAU OF CONSULAR AFFAIRS RENA BITTER; DEPUTY ASSISTANT SECRETARY OF STATE BUREAU OF CONSULAR AFFAIRS VISA SERVICES JULIE M. STUFFT; and DEPUTY CHIEF OF MISSION OF THE U.S. EMBASSY IN ISLAMABAD, PAKISTAN ANDREW SCHOFER,

                                Defendants.

**MEMORANDUM AND ORDER**
1:23-CV-07214 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

      Plaintiff Bashiran Bibi ("Plaintiff") brings the instant action against Assistant Secretary for Consular Affairs at the United States Department of State Rena Bitters, Deputy Assistant Secretary for Visa Services in the Bureau of Consular Affairs at the United States Department of State ("State Department") Julie Stuffet, and Deputy Chief of Mission to Pakistan ("DCM") Andrew Schofer (collectively, "Defendants"). Plaintiff seeks a writ of mandamus to compel Defendants to adjudicate her visa application, adjust the visa category, and issue a visa, pursuant to the Mandamus Act, 28 U.S.C. § 1361, Administrative Procedure Act ("APA"), 5 U.S.C. § 701-6 and Child Status Protection Act ("CSPA"), 8 U.S.C. § 1153. Defendants move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all of Plaintiff's claims.

1

# BACKGROUND[1]

## I. Regulatory Framework for Visa Application

Under the Immigration and Nationality Act, a foreign national may seek an immigrant visa based on, *inter alia*, his or her family relationship to a United States citizen or legal permanent resident ("LPR"). 8 U.S.C. §§ 1153(a), 1154(a)(1)(A)(i), (a)(1)(B)(i)(I), 8 C.F.R. § 204.1(a)(1). To do so, the U.S. citizen or legal permanent resident must first file a petition with U.S. Citizenship and Immigration Services ("USCIS") to establish the qualifying relationship with the foreign national beneficiary. *See* 8 C.F.R. § 204.1(a). An approved petition is given a "priority date," which is the date that the approved petition was filed with USCIS (*see Id.* § 204.1(b)) and classified in the appropriate category depending on the immigration status of the petitioning relative and their relationship with the foreign national.

Once USCIS approves the petition, the case is forwarded to the State Department's National Visa Center ("NVC") for processing. *See* 9 Foreign Affairs Manual ("FAM") 504.1-2. Once processed, the case is deemed documentarily qualified, which means that the visa applicant has submitted the necessary documentation to be scheduled for an interview. *Id.* An interview is usually scheduled with a consular officer abroad at the U.S. embassy or consulate with jurisdiction over the applicant's place of residence. 22 C.F.R. §§ 42.61–.62. At the interview, a consular officer reviews and adjudicates the visa application, determining whether to issue or refuse the visa. *See* 8 U.S.C. § 1201(a)(1); 9 FAM 504.1-3(g). A consular officer refuses a visa application when the applicant fails to establish his or her eligibility to receive the visa. *See* 8 U.S.C. § 1201(g).

---

[1] The following facts are taken from the complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

2

An applicant's eligibility to receive a visa may be affected by the availability of visa numbers in the applicant's family-preference category.[2] Indeed, Congress imposes strict annual limits on the number of available visas. 8 U.S.C. § 1151(c)(1). Thus, USCIS's approval of a petition for an applicant in a preference category does not necessarily result in an applicant's ability to immediately apply for a visa. *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 47 (2014). Instead, the petition approval provides the applicant "a place in line" to apply for a visa. *Id.* The system is "first-come, first-served" within each preference category, such that an immigrant visa number becomes available to a beneficiary based on the priority date of his or her approved petition.[3] *Scialabba*, 573 U.S. at 48; 8 U.S.C. § 1153(e)(1).

In 2002, Congress passed the Child Status Protection Act to protect beneficiaries who were considered children when their petitions were filed but aged out of child status due to processing delays. Under the Child Status Protection Act, to determine whether a beneficiary who is a son or daughter of an LPR is a "child" under age 21, the beneficiary's age is calculated by reducing "the age of the [beneficiary] on the date on which an immigrant visa number becomes available" by "the number of days in the period during which the applicable [immigrant] petition was pending [adjudication with USCIS]." 8 U.S.C. § 1153(h)(1). Thus, section 1153(h)(1) provides the "statutory age" for certain purposes for certain sons and

---

[2] *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 46–47 (2014); 8 U.S.C. § 1153(a) (the "F1" category: unmarried, adult (over 21) sons and daughters of U.S. citizens); 8 U.S.C. § 1153(a)(2)(A) (the "F2A" category: spouses and unmarried children (under 21) of LPRs); 8 U.S.C. § 1153(a)(2)(B) (the "F2B" category: unmarried, adult (over 21) sons and daughters of LPRs); 8 U.S.C. § 1153(a)(3) (the "F3" category: married sons and daughters of U.S. citizens); 8 U.S.C. § 1153(a)(4) (the "F4" category: brothers and sisters of U.S. citizens).

[3] Every month, the State Department publishes a "Visa Bulletin" with updated cut-off dates for each family-preference category, indicating that visa numbers are available for beneficiaries with priority dates earlier than the cut-off date. *See* 8 C.F.R. § 245.1(g)(1); 22 C.F.R. § 42.51(b). If a petition's priority date is prior to the cut-off date in the "Final Actions Dates" chart on the Visa Bulletin, then a visa number is considered available, and the beneficiary may apply for an immigrant visa. However, if the beneficiary's priority date is later, then a visa number is not available given the statutory limits set by Congress, and the beneficiary must wait. *See* 22 C.F.R. § 42.51(b).

3

daughters of LPRs that may differ from their actual, biological age.  If the visa applicant's actual age and statutory age are both determined to be 21 years or older, 8 U.S.C. § 1153(h)(3) mandates automatic conversion of the applicant's visa category.

## II.     Plaintiff's Visa Application

Plaintiff is an LPR.  (Compl. ¶ 9, ECF No. 1).  On May 16, 2016, Plaintiff filed an I-130 Petition for Alien Relative (the "Petition") for her daughter, Aaiza Shahtaj, who was born on August 16, 1995.  (*Id.* ¶¶ 2, 13–4.)  On or around February 25, 2017, United States Citizenship and Immigration Services ("USCIS") issued a notice approving the Petition and noting that it had been transferred to NVC for consular processing.  (*Id.* ¶ 15; Compl. Ex. E, ECF No 1-2.)  On March 26, 2017, Aaiza received an email from NVC confirming receipt of the Petition and listing Aaiza's visa category as F2A, which designates LPRs' spouses and unmarried children under age 21.  (*Id.* ¶¶ 15–16, 69.)

Aaiza turned 21 years old on August 16, 2016.  (*Id.* ¶ 13.)  On September 20, 2017, Plaintiff's attorney received an email from NVC, stating that the I-130 Petition was not "eligible for further processing" because of "numerical limitations on immigrant visa issuance prescribed by law."  (*Id.* ¶ 19.)  NVC's email listed Aaiza's visa category as F2B, which designates LPRs' spouses and unmarried children over age 21.  (*Id.* ¶¶ 19, 69.)  On February 24, 2019, Plaintiff's attorney requested that NVC redesignate Aaiza to visa category F2A, consistent with Aaiza's age under the Child Status Protection Act.  (*Id.* ¶ 20.)  On April 20, 2019, Plaintiff's attorney told her that Aaiza was redesignated to visa category F2A.  (*Id.* ¶ 21.)[4]

---

[4] The Complaint states that Plaintiff's former counsel "confirmed [Aaiza's] successful category conversion to F2A," citing Ex. K, which the Complaint describes as an email between the former attorney and NVC. (Compl. ¶ 21.) However, Ex. K only reflects an email from the former attorney to Plaintiff, notifying Plaintiff of the purported redesignation.  (*See* Ex. K.)

4

On August 5, 2019, Plaintiff's attorney received a notice that Aaiza's visa interview was scheduled for September 3, 2019.[5] (*Id.* ¶ 23.) On the day of Aaiza's interview, she was informed that a visa would be issued once she provided the requested additional documentation, which included photographs of herself and Plaintiff. (*Id.* ¶¶ 24, 25.) Plaintiff's attorney submitted the requested additional documentation on or around October 31, 2019. (*Id.* ¶ 24.)

On or around December 19, 2019, Aaiza received a phone call from the United States Embassy in Islamabad ("U.S. Embassy") informing her that she would have to wait an additional year for her visa to be issued and that her visa category had been converted from F2A to F2B because she was not covered by Child Status Protection Act. (*Id.* ¶ 26.) On February 8, 2021, after Plaintiff emailed the U.S. Embassy requesting a status update, NVC responded that Aaiza's visa application was refused in accordance with Presidential Proclamation 10014, "Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak." (*Id.* ¶¶ 27–28.) On February 24, 2021, President Biden revoked Presidential Proclamation 10014. (*Id.* ¶ 29.) Subsequently, Plaintiff requested the issuance of the visa in light of the Proclamation 10014 revocation on April 6, 2021. (*Id.* ¶ 30.) The U.S. Embassy responded it was in the process of re-opening previously frozen and temporarily refused cases.[6] (*Id.* ¶ 31.) Neither Plaintiff nor Aaiza has received further updates regarding Aaiza's Immigrant Visa application. (*Id.* ¶ 32.)

---

[5] The Complaint states that Aaiza was designated Visa Category FA2 at the time of her September 3, 2019 Immigrant Visa Interview, and cites Ex. M, the Islamabad Embassy Immigrant Visa interview notice. (Compl. ¶ 23.) However, the document does not list Aaiza's Visa Category. (*See* Ex. M, ECF No. 1-2.)

[6] The Complaint states that an email from the Islamabad Embassy stated that they were in the process of re-opening Aaiza's case, citing Ex. S. (Compl. ¶ 30.) However, the email only states that the U.S. Embassy was in the process of opening up temporarily refused cases that had been frozen for longer than one year due to Presidential Proclamation 10014. (*See* Ex. S.)

5

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The Petitioner bears the burden of establishing beyond a preponderance of the evidence that subject-matter jurisdiction exists. *Id.* "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to Petitioner[].'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court deciding whether to grant a motion to dismiss must "draw all reasonable inferences in [the plaintiff's] favor, assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (citation omitted). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Further, a court is not obligated to accept a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).

## DISCUSSION

### I. Standing

Defendants argue that Plaintiff's request for a writ of mandamus to compel Defendants to adjudicate Plaintiff's visa application should be dismissed because Plaintiff fails to establish that she has standing. (Mem. of L. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 12–15, ECF No. 10-1.) The Court agrees.

Article III of the United States Constitution limits the jurisdiction of federal courts "to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). A case or controversy only exists where the plaintiff has demonstrated that she has standing. *Id.* To establish standing, a plaintiff must show: (1) that she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion*, 594 U.S. at 423 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). Because standing is not merely a pleading requirement, but "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan*, 504 U.S. at 561. And "[w]hen a claimant lacks standing, a court has no subject matter jurisdiction over the case." *Schachter v. U.S. Life Ins. Co. in City of New York*, 77 F. App'x 41, 42 (2d Cir. 2003) (citing *In re United States Catholic Conference v. Baker*, 885 F.2d 1020, 1023 (2d Cir. 1989).

Plaintiff fails to satisfy the third element necessary to plead standing because she cannot demonstrate that the relief she seeks—an order directing adjudication of Aaiza's visa application,

which is currently "refused"—would result in an outright grant or denial of a visa. As Defendants correctly argue, such an order by this Court would necessarily result in another "refusal." (Defs.' Mem. at 15.) This is so because Aaiza's visa category was converted by operation of law from F2A to F2B[7] (the category reserved for unmarried children over age 21 of LPRs). 8 U.S.C. § 1153(h)(3) ("If the age of an alien is determined . . . to be 21 years of age or older . . , the alien's petition shall automatically be converted to the appropriate category. . . ."). Given the statutory limits set by Congress, there are no visa numbers available for F2B applicants with Aaiza's May 16, 2016 priority date, and her visa application would remain "refused" under INA § 221(g). *See* 22 C.F.R. § 42.51(b) ("[T]he Department shall allocate immigrant visa numbers for use in connection with the issuance of immigrant visas and adjustments based on the chronological order of the priority dates of visa applicants. . . .").[8] Plaintiff seeks an outright grant or denial of Aaiza's visa application. That is not possible. Accordingly, Plaintiff's claim must be dismissed for lack of subject matter jurisdiction. *See Schachter*, 77 F. App'x at 42.

---

[7] As Defendants argue, Plaintiff's insistence that Aaiza's application be adjudicated under Visa Category F2A, which is reserved for LPRs' unmarried children under age 21, is misguided. (Defs.' Mem. at 10 n.9.) Although Aaiza's I-130 Petition was approved by USCIS on February 25, 2017, when Aaiza was still 20 years old, there were no F2A visa numbers available until May 1, 2018. However, by May 1, 2018, Aaiza was no longer eligible for an F2A visa because both Aaiza's actual and CSPA statutory ages were over 21. That is, Aaiza, who was born on August 16, 1995, was 22 years, 8 months, and 15 days old; and Aaiza's CSPA statutory age, which is her actual age on the date a visa number became available (22 years, 8 months, and 15 days) minus the time that the I-130 petition was pending adjudication with USCIC (9 months and 9 days), was 21 years, 11 months, and 6 days.

[8] S*ee also* U.S. Dep't of State, "Visa Bulletin for January 2024," https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2024/visa-bulletin-for-january-2024.html ("Numbers are authorized for issuance only for applicants whose priority date is earlier than the final action date listed below" and reflecting that the final action date for F2B visas is October 1, 2015)

## II.  Mandamus Act

Defendants argue that Plaintiff's request for a writ of mandamus to compel Defendants to issue Aaiza a visa and adjust Aaiza's visa category, pursuant to the Mandamus Act, APA, and CSPA must be dismissed because Plaintiff fails to establish a "clear right to the relief sought" or "a plainly defined and peremptory duty on the part of the defendant to do the act in question" as required by the Mandamus Act.  (Defs.' Mem. at 23–24.)  The Court agrees.

The Mandamus Act gives the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The "exercise of the power of mandamus is a matter committed to the sound discretion of the [trial] court."  *Pesantez v. Johnson*, No. 15 CIV. 1155 (BMC), 2015 WL 5475655, at *3 (E.D.N.Y. Sept. 17, 2015) (quoting *Cartier v. Sec'y of State*, 506 F.2d 191, 199 (D.C. Cir. 1974)).  However, before the Court may exercise the power of mandamus, a plaintiff must show "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available."  *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (citation and internal quotations omitted).

Here, Plaintiff has "not demonstrated that [she] ha[s]a 'clear right' to an order compelling the issuance of a visa, nor that there is a 'plainly defined and peremptory duty' on the part of Defendants to grant the visa, because the decision to issue or deny a visa is firmly rooted in the discretion of the Consul General."  *Khanom v. Kerry*, 37 F. Supp. 3d 567, 577 (E.D.N.Y. 2014).  Indeed, "Congress has vested the United States consulate officers with the exclusive power to issue or deny visas . . . . As such, district courts have no jurisdiction to review a consular official's decision to deny a visa to a foreign national."  *Morales v. Goldbeck*, No. 12–CV–2350, 2013 WL 937825, at *3 (E.D.N.Y. Mar. 11, 2013); *Alharbi v. Miller*, 368 F. Supp. 3d 527, 553

9

(E.D.N.Y. 2019) ("[T]he doctrine of consular nonreviewability precludes judicial review of a consular official's decision to issue or withhold a visa" (quoting *Abdo v. Tillerson*, No. 17 CIV. 7519, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019)).  Plaintiff similarly fails to establish that she has any right to an order directing Defendants to convert Aaiza's visa category or that Defendants have a duty to implement the conversion.  Indeed, the conversion of Aaiza's immigrant visa category from F2A to F2B was an automatic function of the statutory framework imposed by Congress.  *See* 8 U.S.C. § 1153(h)(3).  Therefore, as Defendants argue, any order directing the conversion of Aaiza's visa category would necessarily require Defendants to act in direct contravention of governing statutes, thus impeding on separation of powers principles.  *See Trump v. Hawaii*, 585 U.S. 667, 670 ("[T]he admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control") (citation and internal quotation omitted).   Thus, the Mandamus Act "does not create jurisdiction to compel the issuance of a visa" or to compel the conversion of Aaiza's Immigrant Visa Category, and Plaintiff's Mandamus Act claims fail as a matter of law.  *See Khanom*, 37 F. Supp. 3d at 577.  Accordingly, Plaintiff's request for a writ of mandamus compelling Defendants to issue a visa or adjust Aaiza's visa category is dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York          /s/ LDH
       September 30, 2024          L<small>A</small>SHANN D<small>E</small>ARCY HALL
                                                United States District Judge